UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-23675-CIV-ALTMAN-Reid

DISTRICT THEATERS, INC., *et al.*,

    Appellants,

v.

CINEMEX HOLDINGS USA, INC., *et al.*,

    Appellees.

_____/

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA – MIAMI DIVISION

*In re: Cinemex Holdings USA, Inc.*
*Case No. 20-14696-LMI*

**REPLY BRIEF OF THE APPELLANTS TO THE
GUC CLAIMS TRUSTEE'S RESPONSE TO APPELLANTS' BRIEF
AND JOINDER TO DEBTOR'S RESPONSE BRIEF**

Michael D. Seese, Esq.
Florida Bar No. 997323
mseese@seeselaw.com
101 N.E. 3rd Avenue, Suite 1270
Fort Lauderdale, Florida 33301
Telephone No. (954) 745-5897

*Counsel for the Appellants*

## TABLE OF CONTENTS

                                                                                                                                              **Page**

BACKGROUND …………….….......................................................1

THE GUC CLAIMS TRUSTEE'S RESPONSE IS LATE-FILED …....2

ARGUMENTS AND REPLIES

    I.      The GUC Claims Trustee Joins In and Incorporates By Reference the Arguments and Assertions Made By the Appellees in the Response Brief ………………………….2

    II.     The GUC Claims Trustee Maintains that the Appellants Did Not Satisfy All Conditions Precedent, as (A) the Appellees Had Not Yet Had Reasonable Access to, and the Right to Conduct a Physical Inspection of, the Properties and Assets, and (B) the Appellants Violated Their Covenant to Continue Managing the Theaters in a Manner Consistent With Their Past Practices ……….…2

          A.    A Physical Inspection Was Not a Condition Precedent to Closing, and the Appellants Afforded the Appellees Reasonable Access and the Right to Conduct a Physical Inspection ………..………..3

          B.    The Appellants Did Not Violate Any Covenant to Operate Their Businesses in the Ordinary Course Consistent With Past Practices ……………….....7

    III.    The GUC Claims Trustee Submits That Reversal of the Bankruptcy Court's Order Will Significantly Prejudice Other Unsecured Creditors With Valid Claims Against The Estate………………………………………….…10

**Page**

    IV.    The GUC Claims Trustee Submits that the EPAS Set Outside Closing Dates of April 30, 2020 and May 31, 2020 ……………………………………………12

CONCLUSION ………………………………………………….13

CERTIFICATE OF COMPLIANCE……………………………….14

CERTIFICATE OF SERVICE…………………………………..15

## TABLE OF AUTHORITIES

                                                                                                                    **Page**

**Cases**

*AB Stable VIII LLC v. Maps Hotels and Resorts One, LLC,*
2020 WL 7024929, at *71 (Del. Ch. 2020) ……………………..…..8, 9

*AB Stable VIII LLC v. Maps Hotels and Resorts One, LLC,*
2021 Del. LEXIS 386, at *29 (Del., Dec. 8, 2021) ……………...…..8, 9, 10

*Snow Phipps Grp., LLC v. KCAKE Acquisitions, Inc.,* No. 2020-0128,
2021 Del. Ch. LEXIS 84, at *79 (Del. Ch. Apr. 30, 2021)…………….10

**Rules**

Fed.R.Bankr.P. 8014(b) ……………………………………………….2

Fed.R.Bankr.P. 8015(h) ……………………………………………….2

Fed.R.Bankr.P. 8015(a) ……………………………………………….14

## BACKGROUND

On October 18, 2021, the Appellants filed their *Notice of Appeal* of the *Memorandum Opinion on Objection to the Khan Parties' Claims (ECF #1153)* [DE 244]¹ (the "Opinion") entered by the United States Bankruptcy Court (the "Bankruptcy Court").

On January 14, 2022, the Appellants filed their *Initial Brief of Appellants* [Doc. #31] (the "Brief"). On February 25, 2022, the Appellees filed their *Response Brief of Appellees* [Doc. #35] (the "Response Brief"). On March 15, 2022, the Appellants filed their *Reply Brief of the Appellants* [Doc. #38] (the "Reply").

On July 22, 2022, this Court entered the *Order on Motion to Intervene* (Doc. # 44) (the "Intervention Order"), pursuant to which the Court granted *GUC Claims Trustee's Motion to Intervene In Appeal With Incorporated Memorandum of Law* [Doc. # 15] and ordered that (a) the GUC Claims Trustee had thirty (30) days from entry of the Intervention Order, or August 21, 2022, to file a response to the Brief, and (b) the Appellants would have fifteen (15) days from the filing of the GUC Claims Trustee's response to reply.

---

¹ In this reply, (a) "DE" references electronic docket entries in Case No. 20-14695-LMI or Case No. 20-14696; all references to DE are to Case No. 20-14696 unless *695 is denoted, in which case the reference is to Case No. 20-14695; a reference to DE 100-10 is to DE 100, which has multiple exhibits attached; (b) "Doc.#" references the electronic docket entries in this appeal, Case No. 21-23675; and (c) "TR" references the trial transcripts of the proceedings conducted by the Court on May 20, 2021 ("TR1"), June 18, 2021 ("TR2"), and July 9, 2021 ("TR3"); a reference to "TR2 285:2-3" would mean the Transcript from June 18, 2021, page 285, lines 2-3.

On August 22, 2022, the GUC Claims Trustee filed its *Reply to Appellants' Brief and Joinder to Debtors' Response Brief* [Doc. # 45] (the "GUC Claims Trustee's Response").

## THE GUC CLAIMS TRUSTEE'S RESPONSE IS LATE-FILED

In accordance with the Intervention Order, the GUC Claims Trustee's response brief was to be filed no later than thirty (30) days following entry of the Intervention Order. As the Intervention Order was entered on July 22, 2022, the GUC Claims Trustee's response brief would be due no later than August 21, 2022.

The GUC Claims Trustee's Response was filed on August 22, 2022, and, therefore, is untimely.[2]

## ARGUMENTS AND REPLIES

I. **The GUC Claims Trustee Joins In and Incorporates By Reference the Arguments and Assertions Made By the Appellees in the Response Brief**

As the GUC Claims Trustee joins in, and incorporates by reference, the arguments and assertions made by the Appellees in the Response Brief, the Appellants herein incorporate by reference their arguments and assertions set forth in the Brief and the Reply.

II. **The GUC Claims Trustee Maintains that the Appellants Did Not Satisfy All Conditions Precedent, as (A) the Appellees Had Not Yet Had Reasonable Access to, and the Right to**

---

[2] The GUC Claims Trustee's Response also does not appear to satisfy the requirements under Rules 8014(b) and 8015(h).

2

**Conduct a Physical Inspection of, the Properties and Assets, and (B) the Appellants Violated Their Covenant to Continue Managing the Theaters in a Manner Consistent With Their Past Practices**

Notwithstanding the GUC Claims Trustee's joinder in, and incorporation by reference, the arguments and assertions made by the Appellees in the Response Brief, the GUC Claims Trustee emphasizes that not all conditions precedent to closing had been satisfied. Specifically, the GUC Claims Trustee references the Appellees' position (a) "that it [Appellees] had not yet had reasonable access to, and the right to conduct a physical inspection of, the properties and assets[;]"and (b) the Khan Parties [Appellants] had violated their covenant to continue managing the theaters in a manner consistent with their past practices." *GUC Claims Trustee's Response*, p.2.

**A.  A Physical Inspection Was Not a Condition Precedent to Closing, and the Appellants Afforded the Appellees Reasonable Access and the Right to Conduct a Physical Inspection**

Aside from the arguments and assertions made by the Appellants in the Brief and the Reply, the Appellants submit and maintain that a physical inspection was not a condition precedent to closing. [DE 66 and DE 67, Section 8.1].

The conditions precedent to closing are set forth in Section 8.1 of the EPAs and do not include performing a physical inspection. [DE 66 and DE 67, Section 8.1]. If, as suggested by the Appellees, and now the GUC Claims Trustee, that a

3

physical inspection was so vitally important, then, presumably, a physical inspection would have been set forth in Section 8.1 of the EPAs. The only reference to a physical inspection appears in Section 7.2(A) of the EPAs, which provides, in part, that the Khan Parties shall "afford Buyer and its counsel, accountants and other authorized agents and representatives, . . . reasonable access to and the right to inspect all of the properties, assets, premises, books and records, contracts, agreements and other documents and data related to the Company Group[.]" [DE 66 and DE 67, Section 7.2(A)].

Even so, there is no dispute that the Appellants afforded the Appellees reasonable access and the right to conduct an inspection. During Trial, Mr. Marti testified that "Star Cinema Grill never denied us having access to their theaters[,]" (TR3 625:3-9) in response to whether any of the Khan Parties "prevented, impeded or denied Cinemex or its representatives from conducting any physical inspections of the Star Cinema Grill Theaters" between "March 10th and March 24th [2020]". *Id.; see also* Brief, p.42. Mr. Marti further testified at Trial that "[t]here was no limitation on the communication between the SCG Employees and Cinemex" between March 10, 2020 and March 24, 2020. [TR3 623:16-25; TR3 624:19-25; TR3 625:1-2].

Even assuming, *arguendo*, that a physical inspection was a condition precedent, the Appellees cannot rely upon any such failure of a condition, if they are

4

the cause of such failure. [DE 66 and DE 67, Section 8.3]. Section 8.3 of the EPAs provides that "[n]o Party may rely on the failure of any condition set forth in this ARTICLE 8 to be satisfied if such failure was caused by such Party's failure to use commercially reasonable efforts to case the Closing to occur, as required by Section 7.4(A)." [DE 66 and DE 67, Section 8.13].

The fact remains the Appellees could have inspected the assets had they opted to do so. As the Bankruptcy Court found and concluded, while [t]here is a dispute . . . as to whether an inspection of the SCG Theaters while they were closed would satisfy Section 7.2 of the EPAs . . . [,] Cinemex has not indicated where in the EPAs a physical inspection must take place while the theaters are operating". [DE 244, p.36, ¶133]. The Bankruptcy Court further noted that "Mr. Marti testified as to a variety of reasons why the inspections needed to occur while the theater was in operation, but other than timing delivery of food and the food to table experience, the other 'live experience' requests seemed to have occurred during the February Tours." *Id.* The Bankruptcy Court also found that "Cinemex *did* tour the theaters were operating during the February Tours." *Id.* (emphasis in original).

During Trial, Mr. Marti attempted to differentiate the Marketing Tours from an inspection, but during Mr. Marti's deposition given during the case, in response to questioning regarding inspections, Mr. Marti testified "[w]ell, I have not performed or been on one of those visits, so I don't know exactly." "I've never been

5

on one, so you would have to ask a technician or an operations person." [DE 85, L 9-15].

In their March 24 Response, the primary reason for not closing was because "key personnel are located in Mexico City and cannot get to Houston regardless because the US/Mexico border is closed." [DE 104-10]. Again, the US/Mexico border was not closed, and the Appellees could have traveled to Houston, Texas. [DE 46-16].

Finally, the GUC Claims Trustee asserts that "[t]he Khan Parties effectively admitted that Cinemex had a right to a physical inspection, and sought to compensate for that deficiency by offering to send a private plane, postpone closing if a deposit was made, discount the price, and suggested inspections by a third party." *Id.* The GUC Claims Trustee concludes by asserting that, "[a]s noted by the Appellants, 'the appellees declined' these alternatives.'" *Id.* However, the GUC Claims Trustee's reliance on the foregoing is misplaced. Rather, the Appellees' rejection of the foregoing demonstrates that the Appellees failed to use commercially reasonable efforts to cause the Closing to occur, as required by Section 7.4(A). [DE 66 and DE 67, Sections 8.3 and 7.4]. Accordingly, the Appellees cannot rely upon any failure of any condition to Closing, since their refusal to perform was the cause of any such failure.

      **B.**     **The Appellants Did Not Violate Any Covenant to Operate Their Businesses in the Ordinary Course Consistent With Past Practices**

The GUC Claims Trustee maintains the Appellants violated Section 7.1(A)(a) of the EPAs by failing to conduct their businesses in the "Ordinary Course." Aside from the arguments and assertions made by the Appellants in the Brief and the Reply, the Appellants, again, submit that, although Section 7.1(A)(a) provides that the Appellants must "conduct the Business in the Ordinary Course[,]" the Appellees, and now the GUC Claims Trustee, ignore the qualifiers set forth in Section 7.1(A) of the EPAs, which unambiguously provide the following: except (i) as otherwise provided in this Agreement [the EPAs] or (ii) as described on Schedule 7.1(A), the Appellants shall use "commercially reasonable efforts" to "conduct the Business in the Ordinary Course[.]" [DE 66 and DE 67, Section 7.1(A)].

As noted by the Bankruptcy Court in the Opinion, Schedule 7.1(A) of the EPAs was amended in Schedule Supplement No. 1 to add "The COVID-19 Response[,] which was defined in Schedule 5.5(c) of Schedule Supplement No. 1 as follows:

1. As a result of state and local requirements banning large public gatherings in response to COVID-19, as well as the declaration of a national state of emergency and the public guidance issued by the Center for Disease Control and Prevention with respect thereto, the Company Group, as well as SCG-N, have taken a number of actions and adjusted their business operations accordingly in order to comply with such requirements, including temporarily closing all theaters (including all attached restaurants and dining areas) and

>suspending all operations which such restrictions remain in effect, which has been consistent with the industry-wide practice (collectively, the "COVID-19 Response").

(DE 244, p.30, ¶116). Thus, the Appellants' "COVID-19 Response" was an exception to the condition to operating their Business in the Ordinary Course. Nevertheless, the Bankruptcy Court concluded that Schedule Supplement No. 1 only amended the Appellants' representations and warranties of Articles 4 and 5 of the EPAs, not the covenants of Article 7 of the EPAs, which entirely disregards the unambiguous language set forth in Section 7.1(A) of the EPAs.

Next, the EPAs unambiguously provided that the Appellants were only obligated to use commercially reasonable efforts to operate their Business in the Ordinary Course. As the record established, the Bankruptcy Court concluded that "the Khan Parties used commercially reasonable efforts to temporarily suspend operations of the SCG Theater." [DE 244, p.28, ¶109].

Notwithstanding the foregoing, the GUC Claims Trustee references the Bankruptcy Court's rejection of the Appellants' argument that the opinion of the bankruptcy court, in *AB Stable VIII LLC v. Maps Hotels and Resorts One LLC,* C.A. No. 2020-0310-JTL, 2020 Del.Ch. 353, at *70 (Del. Ch. Nov. 30, 2020), *aff'd, AB Stable VIII LLC v. Maps Hotels and Resorts One LLC,* 2021 Del. LEXIS 386, at *29 (Del. Dec. 8, 2021), was "distinguishable because the material adverse effect (MAE) clause at issue qualified 'past practices' with the word 'only', *i.e.*, in *Maps*, the

8

parties were *only* allowed to act consistently with past practices whereas the absence of 'only' in the MAE clause[3] in the EPAs meant the Khan Parties were not confined exclusively to their past practices." *GUC Claims Trustee's Response*, p.3; *see also*, *Opinion*, p.31, ¶119. As submitted by the Appellants in their Brief, the *Maps* court held, in part, that "by using the adverb "***only,***" "the parties created a standard that looks exclusively to how the business has operated in the past." *Maps*, 2020 Del.Ch. LEXIS 353, at *168-69.

Additionally, in *Maps,* the Court of Chancery of Delaware considered a "commercially reasonable efforts" qualifier, but not with respect to the ordinary course covenant therein at issue. *See Maps, generally*, at *181-185. The *Maps* court noted that the parties' decision to use a commercially reasonable efforts qualifier in areas other than the ordinary course covenant was indicative of their intentional effort to omit the qualifying language with respect to the ordinary course covenant. Thus, the absence of a commercially reasonable efforts qualified was relevant to the court's decision.

Indeed, on appeal, the Supreme Court of Delaware, in *Maps*, went further and held that "the [ordinary course] covenant is absolute – it does not have a reasonableness qualifier. The parties included commercially reasonable efforts

---

[3] The GUC Claims Trustee references the MAE definition; however, the Appellants' reference to the absence of the term, "only," is to the "Ordinary Course" definition in the EPAs.

9

qualifiers elsewhere in the contract, even in the same sentence – makes the absence in the relevant part of the covenant all the more conspicuous. Looking to the actions of other hotels in the industry to judge pandemic response is more analogous to a commercially reasonable efforts provision." *AB Stable VIII LLC v. Maps Hotels & Resorts One LLC,* 2021 Del. LEXIS 386, *29 (Del. Dec. 8, 2021).

The EPAs included express and unambiguous commercially reasonable efforts qualifying language, which distinguishes *Maps* and, therefore, the Bankruptcy Court, the Appellants and the GUC Claims Trustee failed to recognize the magnitude of the "commercially reasonable efforts" qualifier set forth in Section 7.1(A) of the EPAs.

Finally, the GUC Claims Trustee also cites to *Snow Phipps Grp., LLC v. KCAKE Acquisition, Inc.*, No. 2020-0282, 2021 Del.Ch. LEXIS 84, at *79 (Del.Ch. Apr. 30, 2021) for the proposition that the Appellants were required to conduct the business consistent with past practice. *See GUC Claims Trustee's Response*, p.4. However, in reviewing the *Snow Phipps* opinion, it does not appear as though a "commercially reasonable efforts" qualifier was in play, as was the case in *Maps*. Indeed, the *Snow Phipps* court references the *Maps* decision for context and, therefore, the *Snow Phipps* decision is distinguishable. *Id.*

  **III. The GUC Claims Trustee Submits that Reversal of the Bankruptcy Court's Order Will Significantly Prejudice Other Unsecured Creditors With Valid Claims Against the Estate**

During the Trial, the Bankruptcy Court determined liability and not damages. In the event the Opinion is reversed, the Bankruptcy Court will liquidate the amount of the allowed claims of the Khan Parties. Any liquidated amounts shall then become allowed general unsecured claims and entitled to distributions under the terms and conditions of the *Third Amended Joint Chapter 11 Plan of Reorganization of Cinemex USA Real Estate Holdings, Inc., Cinemex Holdings USA, Inc. and CB Theater Experience, LLC* [DE 772] (the "Plan").

The GUC Claims Trustee alleges that holders of allowed unsecured claims shall suffer prejudice in the event the Opinion is reversed as a result of the dilution caused by any allowed claims of the Appellants. However, the Plan provides, in part, "[t]o the extent that a Disputed Claim becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan and, therefore, the Plan contemplates Disputed Claims becoming Allowed Claims.

In the event the Opinion is reversed, and the Khan Parties' claims become Allowed Claims, the Khan Parties will become holders of Allowed Unsecured Claims, the same as, and *pari passu* with, other holders of Allowed Unsecured Claims, regardless of the basis or nature of such claims. The fact that distributions to other holders of Allowed Unsecured Claims may be diluted is of no consequence.

11

Finally, as mentioned by the GUC Claims Trustee, the Khan Parties filed claims on behalf of each of the Appellants, since each of the Appellants were parties to the EPAs and damaged by the Appellees' breach. Accordingly, each of the Appellants filed separate claims against each of the Appellees in accordance with applicable law. Regardless of the aggregate amount of all claims filed, the Appellants have acknowledged they are only entitled to a single recovery, as recognized by the GUC Claims Trustee.

### IV. The GUC Claims Trustee Submits that the EPAs Set Outside Closing Dates of April 30, 2020, and May 31, 2020

The GUC Claims Trustee references Section 9.1(F) of the EPAs in submitting that the EPAs set outside closing dates of April 30, 2020, and May 31, 2020. However, although Section 9.1(F) of the EPAs provides for the rights of the Parties to terminate the EPAs in the event the transactions have not closed by April 30, 2020, or May 31, 2020, respectively, this does not change the fact that the Closing Date was governed by Section 3.1 of the EPAs. [DE 66 and DE 67, Section 3.1].

## **CONCLUSION**

The Khan Parties respectfully request that this Honorable Court reverse the Court's Opinion and remand for further proceedings.

                                                 Respectfully submitted,

                                                 */s/ Michael D. Seese*
                                                 Michael D. Seese, Esq. (FBN 997323)
                                                 SEESE, P.A.
                                                 101 N.E. 3rd Avenue, Suite 1270
                                                 Fort Lauderdale, Florida 33301
                                                 Telephone No. (954-745-5897
                                                 mseese@seeselaw.com

                                                 *Counsel for the Appellants*

## CERTIFICATE OF COMPLIANCE
## WITH RULE 8015(a)(7)(B)

**I HEREBY CERTIFY** that this Reply complies with the type-volume limitation of Rule 8015(a)(7)(B), Fed.R.Bankr.P., as this Reply contains 2,895 words, excluding those sections exempted under Rule 8015(a)(g).

*/s/ Michael D. Seese*
Michael D. Seese, Esq.
FBN 997323

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the *Reply Brief of the Appellants to the GUC Claims Trustee's Response to Appellants' Brief and Joinder to Debtor's Response Brief* has been filed and served electronically via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case on this 6th day of September 2022.

                                               */s/ Michael D. Seese*
                                               Michael D. Seese, Esq.